[Cite as *State v. Simmonds*, 2015-Ohio-4460.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-1065 |
| v. | : | (C.P.C. No. 14CR-232) |
| Devonere Simmonds, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 27, 2015

*Ron O'Brien*, Prosecuting Attorney, *Seth L. Gilbert* and *Steven L. Taylor*, for appellee.

*Dustin M. Blake Co., LLC,* and *Dustin M. Blake*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Devonere Simmonds is appealing from his numerous felony convictions, including aggravated murder with a firearm specification. Because Simmonds was not yet 18 when he killed a store clerk during an armed robbery and attempted to kill the owner of a car he wanted to steal, several of his assignments of error deal with issues particular to juveniles who engage in serious criminal conduct. His appellate counsel assigns five errors for our consideration:

> 1. The juvenile court committed plain error when it failed to appoint a guardian ad litem for Devonere at his transfer proceedings, in violation of R.C. 2151.281(A) and Juv.R. 4(B).
>
> 2. The juvenile court committed plain error when it transferred Devonere's case to criminal court because the mandatory transfer provisions in R.C. 2152.10(A)(1)(a) and 2152.12(A)(1)(a)(i) are unconstitutional in violation of a

> child's right to due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 16, Ohio Constitution.
>
> 3. The juvenile court committed plain error when it transferred Devonere's case to criminal court because the mandatory transfer provisions in R.C. 2152.10(A)(1)(a) and 2152.12(A)(1)(a)(i) violate a child's right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 2, Ohio Constitution.
>
> 4. Devonere's transfer to adult court, convictions, and sentence of life without parole were in violation of his right to be free from cruel and unusual punishments, as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 9, Ohio Constitution.
>
> 5. Devonere was denied the effective assistance of counsel, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, and Article I, Sections 9 and 10, Ohio Constitution.

{¶ 2} Counsel who represented Simmonds did a good job of representing him but had very little to submit by way of a defense. Simmonds basically executed the store clerk by shooting him in the eye once and then returning to shoot the clerk in the head a second time after the clerk briefly survived the first shot. A few days later, while fleeing central Ohio, Simmonds found himself in need of a motor vehicle. He shot the owner of a vehicle in the head while stealing the car. The owner miraculously survived the shooting and was able to testify at the trial.

{¶ 3} In Ohio, persons who commit serious crimes before their 18th birthday are not eligible for the death penalty. Ohio's law is consistent with rulings of the United States Supreme Court as to the scope of the Eighth Amendment to the U.S. Constitution. *See Roper v. Simmons*, 543 U.S. 551 (2005)*; see State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849.

{¶ 4} Ohio law does allow a sentence of life in prison for a juvenile who has committed an aggravated murder. The Eighth Amendment to the U.S. Constitution has not been interpreted to bar such a discretionary sentence as of yet, only a mandatory

sentence of life without parole for juveniles who commit crimes before their 18th birthday.

{¶ 5} Ohio has statutes which provide for a juvenile who is close to his or her 18th birthday to be bound over for trial to the same felony courts that try adult offenders. "A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code" if the child is charged with a category one offense, and the child was at least 16 years old at the time of the offense. R.C. 2152.10(A). "[The juvenile] court has a duty to transfer a case when it determines that the elements of the transfer statute are met, to wit: (1) the charged act would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, (2) the child was 16 or 17 at the time of the act, (3) there is probable cause to believe that the child committed the act charged." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 22; *see* R.C. 2152.12 (A)(1)(a).

{¶ 6} Such a bindover occurred in Simmonds' case on January 13, 2014. The juvenile court conducted a hearing on the mandatory bindover. Simmonds, through the counsel who represented him at all times in juvenile court, stipulated to his age and probable cause. The juvenile court, having found probable cause on a mandatory bindover, transferred the matter to the general division of the Franklin County Court of Common Pleas for criminal prosecution as an adult, pursuant to R.C. 2152.12. The transfer is mandatory for acts that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if they were committed by an adult. R.C. 2152.12(A)(1)(a).

{¶ 7} The counselors were aware of the massive amount of evidence against their client, including a surveillance tape showing the clerk being executed. Nothing was to be gained by engaging in trench warfare in the juvenile court. Counsel did a difficult and professional job but could not undo the clear facts of the case.

### Failure to Appoint a Guardian Ad Litem

{¶ 8} The first assignment of error alleges the juvenile court committed plain error when it failed to appoint a guardian ad litem for Simmonds at his transfer proceedings. Simmonds argues that the juvenile court was required to appoint a guardian as there was a conflict between Simmonds and his mother and grandmother.

{¶ 9}   A juvenile court shall appoint a guardian ad litem to protect the interest of a child when the court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.  R.C. 2151.281(A)(2).  "The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when: * * * (2) [t]he interests of the child and the interests of the parent may conflict".  Juv.R. 4(B).

{¶ 10} Juv.R. 4(B) does not require an actual conflict of interest to trigger the need for a guardian ad litem.  *In re Sappington*, 123 Ohio App.3d 448, 453 (2d Dist.1997). "[T]he juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and the child." *Id.* at 453-54.  We review such decisions under an abuse-of-discretion standard.  *Id.*  "[A]n appellate court should find reversible error under Juv.R. 4(B)(2) when the record from below reveals a strong enough possibility of conflict of interest between parent and child to show that juvenile court abused its discretion." *Id.* at 454.

{¶ 11} The presence of counsel is a factor to consider in appointing a guardian ad litem.   Juv.R.(C)(1) states: "When the guardian ad litem is an attorney admitted to practice in this state, the guardian may also serve as counsel to the ward providing no conflict between the roles exist."  "In evaluating the need for a guardian *ad litem*, courts have also considered whether the minor was represented by counsel.  A juvenile court should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person present to protect the rights and interests of the minor." (Internal citations omitted.)  *In re Sappington* at 455.

{¶ 12} Simmonds' appellate counsel argues that the record shows there was a strong enough possibility of a conflict between the custodians and Simmonds based on the less than favorable upbringing and family life, as well as their inability to control Simmonds' actions.  The record, however, does not demonstrate a potential conflict, nor does Simmonds articulate specifically how the juvenile court's failure to appoint a guardian ad litem prejudiced him.  *See State v. Morgan*, 10th Dist. No. 13AP-620, 2014-Ohio-5661, ¶ 25.

{¶ 13} The judge in the juvenile court was under no duty to provide a guardian ad litem for Simmonds under the circumstances. Simmonds' mother participated in the

proceedings. His grandmother, who was his legal custodian, also participated. There is nothing in the record indicating that the mother or the grandmother's interests were no longer consistent with a role that properly protects the child. *See In re Sappington* at 454. Having some person in a guardian or quasi-guardian role could not have possibly changed the proceedings. The juvenile court did not abuse its discretion in failing to appoint a guardian ad litem.

{¶ 14} The first assignment of error is overruled.

## Constitutional Challenges to Ohio's Mandatory Transfer Statute

{¶ 15} Simmonds argues in his second, third, and fourth assignments of error that the mandatory transfer laws of Ohio violate due process, equal protection, and cruel and unusual punishment provisions of both the U.S. Constitution and the Ohio Constitution. We note that these same arguments have been recently rejected by this court in *State v. J.T.S.*, 10th Dist. No. 14AP-516, 2015-Ohio-1103. Also, several other appellate districts have rejected these constitutional challenges to Ohio's mandatory transfer statute. *See, e.g.*, *State v. Anderson*, 2d Dist. No. 25689, 2014-Ohio-4245; *State v. Kelly*, 3d Dist. No. 14-98-26 (Nov. 18, 1998); *State v. Lane*, 11th Dist. No. 2013-G-3144, 2014-Ohio-2010; *State v. Quarterman*, 9th Dist. No. 26400, 2013-Ohio-3606 (Carr, J., concurring); *State v. Mays*, 8th Dist. No. 100265, 2014-Ohio-3815.

{¶ 16} Simmonds' counsel failed to preserve any of these constitutional issues at the January 13, 2014 bindover proceeding. Normally " ' "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." ' " *State v. Quaterman*, 140 Ohio St.3d 464, 468 (2014), quoting *State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. As the Supreme Court of Ohio explained in *Awan*, "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *Awan* at 122.

{¶ 17} "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990). "Plain errors or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court." Crim.R. 52(B). "[R]eviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68.

### Due Process of Law

{¶ 18} The second assignment of error argues that the juvenile court committed plain error in transferring Simmonds' case under the mandatory transfer provisions in violation of a child's right to due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 16, of the Ohio Constitution. Simmonds argues that the juvenile court should hold an amenability hearing before transferring a child to criminal court.

{¶ 19} We have already addressed these arguments previously in *State v. J.T.S.*, which relied on the Third District case of *State v. Anderson*, which held that "the juvenile offender claimed that the failure to provide for an amenability hearing violated the holding of the United States Supreme Court in *Kent v. United States*, 383 U.S. 541 (1966)." *State v. J.T.S.* at ¶ 40, citing *Anderson* at ¶ 67.

> *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), * * * outlined eight factors to be considered in transfer proceedings before a juvenile court orders bindover. *However, other appellate districts have rejected this argument, based on the fact that Kent involved discretionary, rather than mandatory transfer. See State v. Lane*, 11th Dist. No. 2013-G-3144, 2014-Ohio-2010, ¶ 57, citing *State v. Kelly*, 3rd Dist. Union No. 24-98-26 (Nov. 18, 1998). Thus, "because the *Kent* factors were intended to address the problem of arbitrary decision-making and disparate treatment in discretionary bindover determinations, due process does not require use of these factors when the legislature has statutorily eliminated discretionary bindover determinations." *Id.*
>
> In addition, we have previously held that mandatory bindover does not violate due process. *State v. Agee*, 133 Ohio App.3d 441, 448-449 (2d Dist. 1999), citing *State v. Ramey*, 2d Dist. No. 16442 (May 22, 1998). In this regard, we reasoned in *Ramey* that "[b]ecause amenability to treatment as a juvenile is not an issue determinative of transfer when the juvenile court finds that the underlying offense is one that [the statute] defines as an offense of violence, the juvenile is not thereafter entitled to a hearing to determine his amenability to

> treatment. Thus, no due process violation is demonstrated by the lack of an 'amenability' hearing * * *."

(Emphasis added.) *Anderson* at ¶67-68. The Third District determined that an amenability hearing using the *Kent* factors is not a fundamental right. "[S]ubstantive due process did not prevent the General Assembly from removing the *Kent* factors from consideration where the juvenile is charged with certain serious offenses, 'provided that removal is rationally related to a legitimate governmental purpose.' The court went on to hold that the mandatory bindover statute is rationally related to the legitimate governmental objective of deterring violent juvenile crime." *State v. J.T.S.* at ¶ 41, quoting *Kelly* at 20.

{¶ 20} Simmonds received more than adequate due process of law in the juvenile court. He had the opportunity, with the assistance of counsel, to contest the evidence which clearly showed him executing the clerk. Under facts as horrific as presented here, the fact that a bindover to adult court was mandated by statute is rationally related to the legitimate governmental object of deterring violent juvenile crime. This case presents no colorable question of lack of due process, given the horrific facts. For the reasons set forth in *State v. J.T.S.* and the case cited therein, we reject the contention that R.C. 2152.10 and 2151.12(A)(1)(a) violate a juvenile offender's right to due process of law.

{¶ 21} The second assignment of error is overruled.

### Equal Protection Under the Law

{¶ 22} In the third assignment of error, Simmonds argues that juvenile court committed plain error in transferring Simmonds' case under the mandatory bindover provisions in violation of a child's right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 2, of the Ohio Constitution. Simmonds argues that Ohio law creates classes of similarly situated children who are treated differently based solely upon their age and not rationally related to the purpose of juvenile delinquency proceedings.

{¶ 23} The juvenile offender in *Anderson* and in *State v. J.T.S.* made the same argument. The Third District in *Anderson* stated:

> Although Anderson contends that there is little difference between children who are younger than 16 and those who are older than 16, he does not support this contention with any

type of empirical evidence. In the absence of such evidence, we cannot find that the distinction the legislature made is unconnected to its aims. As the court in *Lane* observed, "the purpose of this legislation is to protect society and reduce violent crime by juveniles. * * * Contrary to appellant's argument, juveniles who are 14 or 15 are markedly different from those who are 16 or 17 in many ways, e.g., in terms of physical development and maturity. * * * Thus, the legislature's decision to single out older juvenile homicide offenders, who are potentially more street-wise, hardened, dangerous, and violent, is rationally related to this legitimate governmental purpose."

*Id.* at ¶ 75, quoting *Lane* at ¶ 67. "[W]e agree with the reasoning of the other appellate districts on this issue: that the General Assembly's decision to single out older juvenile homicide offenders, who are potentially more streetwise, hardened, dangerous, and violent, is rationally related to this legitimate governmental purpose of protecting society and reducing violent crime by juveniles." *State v. J.T.S.* at ¶ 45, citing *Anderson* and *Lane*.

{¶ 24} The facts of this case also do not present a question of equal protection of the law based upon Simmonds being a juvenile or that the juvenile court committed plain error. If anything, his juvenile status spared him the threat of execution for his criminal spree.

{¶ 25} The third assignment of error is overruled.

### Cruel and Unusual Punishment of Bindover, Conviction and Sentence

{¶ 26} Simmonds argues that his transfer from juvenile court, convictions, and sentence to life without parole were violations of his right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 9, of the Ohio Constitution.

{¶ 27} The Eighth Amendment to the U.S. Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Ohio's mandatory bindover statutes do not violate the Eighth Amendment because they do not govern the sentencing of juveniles but, rather, whether a juvenile case must be transferred to adult court for adjudication. *Mays*, 2014-Ohio-3815, at ¶ 47. R.C. 2152.12 does not mandate punishment, and, therefore, the statute does not violate the

Eighth Amendment prohibition against cruel and unusual punishment. *State v. J.T.S.* at ¶ 49. Simmonds' bindover does not violate the prohibition of cruel and unusual punishment.

{¶ 28} Nothing in the record before us supports an argument that a life sentence for Simmonds constitutes cruel and unusual punishment. The Supreme Court of Ohio has made clear the constitutionality of a sentence of life without parole: "As applied to a juvenile found guilty of aggravated murder under R.C. 2929.03(A), then, Ohio's sentencing scheme does not fall afoul of [*Miller v. Alabama*, __ U.S. _, 132 S.Ct. 2455 (2012)], because the sentence of life without parole is discretionary. Nor is our criminal procedure flawed under [*Graham v. Florida*, 560 U.S. 48 (2010)] and *Miller* by failing to take into account that a defendant is a youthful offender." *State v. Long*, 2014-Ohio-849, ¶ 19. A defendant's youth is a mitigating factor for a court to consider when sentencing. *Long* at ¶ 19. The trial court was made well aware of Simmonds' youth and even noted his youth and emotional immaturity at sentencing. (R. 187, Tr. 828.)

{¶ 29} Not many years ago, many states were still executing juveniles who committed homicides before they turned 18. The case which barred such executions, *Roper v. Simmons*, 543 U.S. 551 (2005), changed that, but gave no indication that a life sentence for a juvenile who committed such crimes constituted cruel and unusual punishment.

{¶ 30} The fourth assignment of error is overruled.

### Allegations of Ineffective Assistance of Counsel

{¶ 31} Simmonds' fifth assignment of error asserts he was deprived of effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, and Article I, Sections 9 and 10, of the Ohio Constitution. Simmonds argues that his counsel failed to challenge the unconstitutional transfer, convictions, and sentence. He also argues that he was denied effective assistance of counsel during plea-bargaining.

{¶ 32} A two-step process is employed when considering allegations of ineffective assistance of counsel. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment

rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle*, 48 Ohio St.2d 391, 396-97 (1976), vacated in part on other grounds, 438 U.S. 910 (1978).

{¶ 33} A counsel's performance "will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), second paragraph of the syllabus. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

{¶ 34} The question is whether counsel acted outside the "wide range of professionally competent assistance." *Id.* at 689. Appellate courts must be highly deferential in scrutinizing counsel's performance. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. * * * There are countless ways to provide effective assistance in any given case." *Id.*

{¶ 35} We do not find that Simmonds has shown there is a reasonable probability that the results of the proceeding would have been different. The two attorneys who represented Simmonds did a good job under adverse circumstances. The guilt of Simmonds could not be seriously contested. A sentence of life in prison without the possibility of parole was readily foreseeable.

{¶ 36} Just prior to trial, counsel obtained an offer from the prosecutor of an agreed sentence of 50 years to life. The fact that Simmonds, as a teenager, refused the plea agreement is not surprising, especially since acceptance of it would have required him to testify against a co-defendant who was a friend. Simmonds claims that his counsel should have moved for a continuance or more appropriately advised him about the plea offer. The questions of whether to move for a continuance or of how trial counsel advised Simmonds as to the plea deal are both clearly within the wide range of professionally competent assistance. Counsel could not, under the facts, especially the facts recorded in

electronic surveillance records, expect to change the likely outcome. The trial was, in some ways, a long slow guilty plea. Counsel could not prevent that outcome.

{¶ 37} The fifth assignment of error is overruled.

{¶ 38} All five assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed*

BROWN, P.J., and DORRIAN, J., concur.

_____