[Cite as *State v. Garner*, 2024-Ohio-5248.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

KHYRESE GARNER,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-60

O P I N I O N

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2022 0364**

**Judgment Affirmed**

**Date of Decision:  November 4, 2024**

---

**APPEARANCES:**

    *Brian A. Smith* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**EPLEY, J.**

{¶1} Defendant- Appellant Khyrese Garner appeals from his conviction in the Allen County Court of Common Pleas after he pled no contest to a single count of murder, an unclassified felony in violation of R.C. 2903.02(B), and was sentenced to a mandatory term of 15 years to life in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶2} On June 10, 2022, Garner (who was 17 at the time) and two friends were with a few girls they had met and decided to procure marijuana. Garner and the group planned to go to Jaden Halpern's house, the former boyfriend of one of the girls, because he was known to sell the drug. At some point, the plan changed from buying marijuana from Halpern to taking it from him by force. To facilitate the robbery, Garner and his group brought fake guns, including one that looked like a rifle.

{¶3} When the group arrived at Halpern's house, they tried to lure him outside to take the drugs and money and run, but when Halpern got suspicious and refused to go outside, Garner and his friends charged in the front door, guns in hand. In the confusion, Halpern's father fired a gun, but instead of hitting one of the

intruders, the bullet punctured his son's abdomen, causing his death. Garner and the others fled the scene but were eventually apprehended.

{¶4} On June 15, 2022, Garner was charged in the Allen County Juvenile Court with a series of crimes which, if committed by an adult, would be felonies, including Count One – murder (R.C. 2903.02(B)); Count Two – aggravated burglary (R.C. 2911.11(A)(1)); Count Three – aggravated robbery (R.C. 2911.01(A)(1)); and Count Four – aggravated robbery (R.C. 2911.01(A)(3)). All four counts had associated firearm specifications. The State later dismissed Count Three and its firearm specification.

{¶5} Following a probable cause hearing in juvenile court, the case was transferred to the Allen County Court of Common Pleas where Garner was indicted on Count 1 – murder; Count 2 – aggravated burglary; and Count 3 – aggravated robbery. All three counts included firearm specifications. After several unsuccessful motions to dismiss on constitutional grounds, on September 1, 2023, Garner pled no contest to Count One – Murder. In exchange for the plea, the State agreed to dismiss the remaining counts and all the firearm specifications. He was sentenced to a mandatory term of 15 years to life in prison and given credit for 448 days served.

{¶6} Garner has filed a timely appeal with four assignments of error. We will address them in a manner that facilitates our analysis.

## II.     Constitutionality of Mandatory Bindover Law

{¶7} In his first assignment of error, Garner argues that R.C. 2152.10(A)(1), Ohio's mandatory bindover law, is unconstitutional, both on its face and as applied because it violates the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution.

Cruel and Unusual Punishment

{¶8} The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "Similarly, Article I, Section 9 of the Ohio Constitution provides that '[e]xcessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishment inflicted.'" *State v. Morris*, 2022-Ohio-4609, ¶ 7. The Ohio Supreme Court has noted that cruel and unusual punishment applies only to the rare case where the penalty would be " 'considered shocking to any reasonable person.'" *State v. Weitbrecht*, 86 Ohio St.3d 368, 371 (1999), quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964); *In re C.P.*, 2012-Ohio-1446, ¶ 60. "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *McDougle* at 69. Another key component is that punishment for a crime should be graduated and proportioned to the offense.

*State v. Moore*, 2016-Ohio-8288, ¶ 31. To reach the level of cruel and unusual punishment, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *McDougle* at 70.

Juvenile Bindover

**{¶9}** Juvenile courts have exclusive jurisdiction over children alleged to be delinquent, but if a child is old enough and is alleged to have committed an act that would be a felony if committed by an adult, the juvenile court may – and in some cases *must* – transfer jurisdiction to adult court for prosecution. R.C. 2152.10, R.C. 2152.12. Both parties agree that under R.C. 2152.10(A)(1), Garner was subject to mandatory transfer because he was over 16 years old at the time of the crime and because he was charged with murder. Where the parties diverge, however, is whether the Eighth Amendment permits this transfer.

Analysis

**{¶10}** It is Garner's contention that R.C. 2152.10's mandatory transfer scheme runs afoul of the Eighth Amendment because the statute does not require the court to consider youthfulness in determining whether to transfer his case over to adult court - an argument that has been rejected by Ohio courts.

**{¶11}** Ohio courts have concluded that mandatory juvenile bind-over statutes do not violate the Eighth Amendment because "to implicate the Eighth Amendment's ban on cruel and unusual punishments, there must be a punishment.

Mandatory bindover does not constitute a punishment: it simply changes the forum where punishment is determined." *State v. McKinney*, 2015-Ohio-4398, ¶ 30 (1st Dist.). *See also State v. Lane,* 2014-Ohio-2010, ¶ 73 (11th Dist.) (concluding that mandatory bindover does not fit the definition of a punishment and thus, the prohibition of cruel and unusual punishment would not apply); *State v. Simmonds*, 2015-Ohio-4460, ¶ 27 (10th Dist.) (reasoning that there are no Eighth Amendment issues "because [the statutes] do not govern the sentencing of juveniles but, rather, whether a juvenile case must be transferred to adult court."); *State v. Anderson*, 2014-Ohio-4245 (2d Dist.); *State v. Mays*, 2014-Ohio-3815 (8th Dist.). As noted in *State v. Quarterman*, 2013-Ohio-3606, ¶ 16 (9th Dist.), "[m]andatory bindover does not equate to punishment any more than the mere prosecution of an adult in the common pleas court constitutes punishment."

{¶12} Because the Cruel and Unusual Punishment Clauses of the United States Constitution and the Ohio Constitution are only implicated by punishments, and being transferred to adult court is not one, Garner's first assignment of error is overruled.

### III. Consideration of Youth in Bindover Proceedings

{¶13} In his third assignment of error, Garner contends that his conviction and sentence were contrary to law because neither the juvenile court nor the adult

court considered his youthfulness as a factor in whether to transfer his case from juvenile to adult court.

{¶14} In the context of transferring the case from juvenile court to adult court, we have already held that the Eighth Amendment does not apply because there is no punishment involved. *"Mandatory bindover does not equate to punishment any more than the mere prosecution of an adult in the common pleas court constitutes punishment." Quarterman* at ¶ 16. It is merely a procedure. Further, Garner has not provided any cases to support his position other than those dealing with sentencing, which would not apply to this argument.

{¶15} To the extent that he argues his sentence is contrary to law, we reject that claim as well. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.); *State v. Skaggs*, 2023-Ohio-2199, ¶ 11-13 (3d Dist.). Garner's sentence was within the statutory range set by the legislature, and the trial court (in both its judgment entry and during the disposition) stated that it considered R.C. 2929.11 and 2929.12.

{¶16} The third assignment of error is overruled.

## IV.  Jurisdiction

{¶17} In his fourth assignment of error, Garner asserts that the trial court did not have subject matter jurisdiction to convict and sentence him because neither the juvenile or adult court considered his youthfulness as a factor in whether to transfer the case. He claims this was a violation of the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution.

{¶18} "[J]uvenile courts have exclusive jurisdiction over cases involving juveniles alleged to have committed acts that would constitute criminal offenses if committed by an adult." *State v. Williams*, 2024-Ohio-1433, ¶ 12. *See* R.C. 2151.23 and 2152.03. The juvenile court relinquishes jurisdiction to the adult court through a mandatory or discretionary bindover proceeding when certain requirements are met. *See* R.C. 2152.12. "For a case involving a defendant who was 16 years old when he allegedly committed murder, the juvenile court is required to 'transfer the case' to the adult court if the juvenile court finds that there is probable cause to believe that the juvenile 'committed the act charged.' " *Id*.; R.C. 2152.12(A)(1)(a)(i).

{¶19} It does not appear that Garner objects to the procedure of transferring his case to adult court. Instead, he again argues that "both the Eighth Amendment, and Article I, Section 9 of the Ohio Constitution, require courts to separately consider the youthfulness of the offender in whether to transfer the case[.]" Appellant's Brief at 23. As we have stated, cruel and unusual punishment is not

implicated in the transfer of a 17-year-old to adult court because there is no punishment involved. The Eighth Amendment and/or Article I, Section 9 is not applicable.

{¶20} The fourth assignment of error is overruled.

## V.     Constitutionality of R.C. 2929.02(B)(1) as to Juveniles

{¶21} In his second assignment of error, Garner argues that R.C. 2929.02(B)(1) is unconstitutional – both on its face and as applied – because it violates the Eighth Amendment's prohibition against cruel and unusual punishment. It is his contention that because the statute makes no provision for a juvenile to receive a sentence of less than 15 years to life, that it takes away the trial court's ability to impose a lesser sentence if it finds youthfulness to be a mitigating factor. This "one-size-fits-all" approach, treating a child of less than 18 in the same manner as an adult, according to him, is cruel and unusual punishment.

{¶22} To support his argument, Garner relies on several United States Supreme Court cases, beginning with *Graham v. Florida*, 560 U.S. 48 (2010). Graham, who was 16 at the time, was sentenced to life in prison without the possibility of parole for armed burglary and attempted armed robbery. He argued that such a harsh sentence was cruel and unusual punishment under the Eighth Amendment. In a 6-3 decision, the United States Supreme Court held that sentencing a juvenile to life without parole for non-homicide crimes violated the

Eighth Amendment. It reasoned that "because juveniles have lessened culpability, they are less deserving of the most severe punishments." *Graham* at 68, citing *Roper v. Simmons*, 543 U.S. 551, 569 (2005). A juvenile offender is not absolved of responsibility for his or her actions, but the transgressions are "not as morally reprehensible as that of an adult." *Id.*, quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988).

{¶23} Two years later, *Miller v. Alabama*, 567 U.S. 460 (2012) extended the logic further, this time to mandatory life sentences without the possibility of parole on juvenile offenders convicted of murder. The *Miller* court concluded that because of the unique circumstances of juveniles, the Eighth Amendment requires that they are given a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 480, quoting *Graham* at 75.

{¶24} Ohio courts have followed suit. In *State v. Long*, 2014-Ohio-849, a case involving aggravated murder, the Ohio Supreme Court held that "[a] court, in exercising its discretion . . . must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole." *Id.* at paragraph one of the syllabus. In *State v. Patrick*, 2020-Ohio-6803, another aggravated murder case, the Court held that "a sentence of life in prison with parole eligibility imposed on a juvenile offender is analogous to a sentence of life in prison without the possibility of parole for purposes of analysis under the Eighth

Amendment and that a court must specifically consider a juvenile offender's youth as a mitigating factor at sentencing." *Id*. at ¶ 36, 42.

{¶25} Finally, in late 2022, the Ohio Supreme Court released *State v. Morris*, 2022-Ohio-4609. In a 4-3 decision, the Court upheld *Patrick* and affirmed that a sentencing court must demonstrate on the record that it considered the offender's youth in sentencing. It should be noted, however, that the dissent called into question the legitimacy of *Morris*' lead opinion, arguing that requiring an on-the-record finding that the court considered the defendant's youth as a mitigating factor is in direct contravention of the United States Supreme Court's holding in *Jones v. Mississippi*, 593 U.S. 98 (2021), which held that sentencing courts are not required to expressly consider a juvenile's age on the record. The dissent highlighted that the *Jones* court stated that it has "never required an on-the-record sentencing explanation" and that "*Miller* did not impose a formal factfinding requirement." *Id* at 101, 116.

{¶26} While noting that Garner's argument is well-thought-out and well-reasoned, we believe there are significant reasons not to extend the holdings of *Patrick* and *Morris* to this case. First, while the appellants in *Patrick* and *Morris* were convicted of aggravated murder pursuant to R.C. 2903.01 (or in Morris' case, complicity to commit aggravated murder) and sentenced under R.C. 2929.03, Garner pled no contest to felony murder (R.C. 2903.02(B)) and was sentenced under R.C. 2929.02(B)(1). Both scenarios deal with homicides, but *Patrick* and *Morris*

concerned R.C. 2929.03 – a statute that provides for multiple punishment options, and Garner was sentenced under a separate statute that does not. Because of that, *Patrick* and *Morris* are not controlling.

**{¶27}** It is also significant that we have found no case (either from the Ohio Supreme Court or another appellate court) holding that a sentence of 15 years to life is unconstitutional when applied to a juvenile offender. Further, the United States Supreme Court has concluded that based on the unique circumstances of juveniles, the Eighth Amendment requires that juvenile offenders be given a " 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Miller*, 567 U.S. at 479, quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010). That is, a juvenile offender must have "hope of restoration," and a "chance for fulfillment outside prison walls." *Graham* at 74-79. In the case of a juvenile like Garner, who is subject to a term of 15 years to life, there is no question he will get that kind of opportunity. Garner was 17 years old when he was sentenced; he will be eligible for parole and release in his early 30's, likely ensuring him decades of "fulfillment outside the prison walls." *See also State v. Brown*, 300 Kan. 542, 564 (2014) (By permitting parole after the mandatory 20-year minimum term is served, sentence gives juvenile offender a meaningful opportunity to obtain release); *Commonwealth v. Okoro*, 471 Mass. 51, 59 (2015) ("We do not read *Miller* . . . to indicate that the proportionality principle at the core of the Eighth Amendment would bar a

mandatory sentence of life with parole eligibility after fifteen years for a juvenile convicted of murder[.]").

{¶28} Finally, from an even higher-level view of the Eighth Amendment, Garner's 15 years to life sentence is not problematic because the punishment is not "grossly disproportionate" to the crime. Ohio courts have noted that the Eighth Amendment does not mandate strict proportionality between crime and sentence, and that "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" is cruel and unusual punishment implicated. *State v. Weitbrecht*, 86 Ohio St.3d 368, 373 (1999), quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J. concurring). As to the question of "gross disproportionality," those cases are limited to ones involving sanctions which are considered "shocking to any reasonable person." *Id*. at 371. "[T]he penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *Id*. quoting *McDougle* at 70.

{¶29} Here, we have a young man who decided to force his way, gun in hand, into his drug dealer's house to steal marijuana. In the process, the homeowner accidentally shot and killed his own son who was at the door of his house. Another young person died - at the hands of his own father - because Garner decided to steal drugs. There can be very little doubt that a 15 years to life sentence is not grossly

disproportionate to the crime of murder. Certainly, it would not shock the sense of justice of the community.

**{¶30}** R.C. 2929.02(B)(1) is not unconstitutional on its face or as applied to Garner. The second assignment of error is overruled.

## VI.    Conclusion

**{¶31}** The judgment of the trial court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**