[Cite as *State v. Mitchell*, 2025-Ohio-1764.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30262 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 03480/1 |
| | : | |
| DATRAYVON MITCHELL | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 16, 2025

. . . . . . . . . . .

CHIMA R. EKEH, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Datrayvon Mitchell appeals from a judgment of the Montgomery County Court of Common Pleas which convicted him of murder and aggravated robbery and sentenced him to 25 years to life in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

**{¶ 2}** In the early morning hours of January 26, 2022, T.G. was working as a Lyft driver when she picked up four young-looking males wearing dark hooded sweatshirts and COVID-style masks; she was to take them to an address on Cambridge Avenue in Dayton. Instead of the scheduled drop-off, the boys redirected her to the 800 block of St. Agnes Avenue. There, they forced her out of the car at gunpoint, took her wallet and cell phone, and then drove off with the vehicle.

**{¶ 3}** T.G. was able to call the police and then track her vehicle using the Subaru Star Link system. The vehicle stopped at a house on Anna Street. Her cell phone was located in a nearby alley. Believing that the robbery suspects were inside of the house, the SWAT team was dispatched. When law enforcement officers arrived, the residents, Dalisa Mitchell and her children, exited the home. While they left, it was apparent that there were other individuals still inside.

**{¶ 4}** Dalisa Mitchell told officers that she had gone out for her birthday and when she returned, her son, Datrayvon Mitchell (who was 15) had brought three other juveniles into the house. Now a suspect in the robbery of T.G., Mitchell was placed in a police cruiser and asked to contact the other juvenile males to see if they would willingly come out of the house. He called the other boys using Instagram video, but no one answered.

**{¶ 5}** While still on the scene at Anna Street, officers received word that there had been another incident with a Lyft driver less than a half mile away, but this time the driver was found shot to death. The destination on the decedent's phone was the same house on Cambridge Avenue to which T.G. was originally supposed to take Mitchell and his

friends. Suspecting that the two incidents were connected, Mitchell was transported to the downtown police station and interviewed about his involvement.

{¶ 6} Mitchell told detectives that he and his friends had ordered a Lyft ride to the Cambridge Avenue location to steal the driver's car. He also admitted to having a Smith and Wesson 9mm handgun and using it to force T.G. out of her Subaru. Mitchell said that another one of his friends drove the vehicle to his mom's house on Anna Street. According to Mitchell, the group planned another Lyft robbery, but this one did not go as planned. Instead of getting out of the car when threatened, like T.G. had, the driver of this vehicle, B.C., refused and tried to speed off. Mitchell admitted that he shot the second driver as he drove away. When officers found B.C.'s car crashed on Ferguson Avenue in Dayton, he was deceased.

{¶ 7} Because he was just 15 years old when the crimes were committed, Mitchell was charged by complaint in juvenile court. After the juvenile court found probable cause and determined that he was not amenable to care and rehabilitation in the juvenile system, Mitchell was bound over to the Montgomery County Court of Common Pleas, General Division, for prosecution as an adult. On December 22, 2022, he was indicted on four counts of murder; three counts of aggravated robbery; three counts of felonious assault; and one count each of tampering with evidence, grand theft of a motor vehicle, and discharge of a firearm on or near a prohibited premises. All of the counts, except tampering with evidence and grand theft of a motor vehicle, had firearm specifications attached.

{¶ 8} Several months later, Mitchell agreed to plead guilty to one count of murder

and its firearm specification and one count of aggravated robbery and its firearm specification. The State agreed to dismiss the remaining charges. In addition, the parties agreed to recommend an aggregate sentence of 25 years to life in prison. On June 25, 2024, the court accepted the plea and stated that it would honor the jointly-recommended sentence.

{¶ 9} Approximately a month later, the trial court sentenced Mitchell to four to six years in prison for aggravated robbery and 15 years to life for murder. The sentences for the three-year firearm specifications were to run consecutively to the underlying offenses, for an aggregate prison term of 25 years to life, as agreed by the parties. There were no objections made at the disposition.

{¶ 10} Mitchell has appealed, raising two assignments of error that we will consider together.

## II.     Juvenile Life Sentences

{¶ 11} In his two assignments of error, Mitchell raises arguments that revolve around juvenile life sentences for felony murder. He contends that the trial court did not follow R.C. 2929.19(B)(1)(b) because it did not consider youth and its mitigating factors before sentencing him to 25 years to life. He also believes that the sentencing statute, R.C. 2929.02(B)(1), is unconstitutional and violates the Eight Amendment's prohibition of cruel and unusual punishment. Before we can attend to the constitutional arguments, there are procedural issues to address.

Appealability of Sentence

{¶ 12} Mitchell's plea deal included an "agreed" or "jointly recommended" sentence

of 25 years to life in prison. Generally speaking, jointly recommended sentences are not reviewable on appeal. R.C. 2953.08(D)(1) provides, "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by the sentencing judge." A sentence is "authorized by law" and is not appealable if it comports with all mandatory sentencing provisions. *State v. Underwood*, 2010-Ohio-1, ¶ 20.

{¶ 13} Mitchell concedes that two of the three requirements from R.C. 2953.08(D)(1) were met: the parties agreed to the sentence, and that term was imposed by the trial court. He argues, though, that the court did not consider his youthfulness, and therefore his sentence was not authorized by law.

{¶ 14} Ohio courts, including this one, have stated that when a sentence is jointly recommended by the parties, it is not subject to appellate review under R.C. 2953.08(D)(1), even if the sentencing court failed to consider the defendant's youth. *State v. Moore*, 2024-Ohio-5839 (2d Dist.). In *State v. Shepherd*, 2024-Ohio-4618 (9th Dist.), a very analogous case to this one, the 16-year-old defendant pled guilty to murder under R.C. 2929.02(B)(1) and agreed to a sentence of 23 years to life. In rejecting a nearly identical argument, the *Shepherd* court explained:

R.C. 2953.08(D)(1) precludes appellate review . . . when the sentence is

authorized by law, has been recommended jointly by the parties, and is

imposed by the sentencing judge. In that situation, appellate review under

R.C. 2953.08 is unnecessary because the parties have agreed that the

sentence is appropriate and the trial court accordingly has elected not to exercise its broad discretion in determining the sentence.

*Id.* at ¶ 32. "The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence." *State v. Porterfield*, 2005-Ohio-3095, ¶ 25. Thus, as to the contention that Mitchell's sentence was not authorized by law, the jointly recommended sentence forecloses that argument.

{¶ 15} However, the Ohio Supreme Court seems to have carved out an exception to the rule that all agreed sentence scenarios are unreviewable. In *State v. Patrick*, 2020-Ohio-6803, the majority concluded that "R.C. 2953.08(D)(3) does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds." *Id.* at ¶ 22. But before discussing the constitutionality of R.C. 2929.02(B)(1), we note that Mitchell did not raise any constitutional issues (or any issues at all) during his sentencing hearing.

{¶ 16} It is well-established that an appellant cannot raise a constitutional issue for the first time on appeal if it was not objected to in the court below. *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus; *State v. Quarterman*, 2014-Ohio-4034, ¶ 15; *State v. Brewer*, 2015-Ohio-693, ¶ 35-36 (2d Dist.). Nevertheless, we have the discretion to consider a forfeited constitutional challenge under a plain error standard of review. *State v. Starling*, 2019-Ohio-1478, ¶ 63 (2d Dist.). Thus, Mitchell must demonstrate that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d

91 (1978), paragraph two of the syllabus. The "reversal must be necessary to correct a manifest miscarriage of justice." *State v. Davis*, 2010-Ohio-5706, ¶ 29. To determine whether the error was outcome determinative, we will examine Mitchell's claim.

Cruel and Unusual Punishment

{¶ 17} The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Similarly, Article I, Section 9 of the Ohio Constitution states that "[e]xcessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishment inflicted." The Ohio Supreme Court has opined that generally cruel and unusual punishment is limited to cases "involving sanctions which under the circumstances would be considered shocking to any reasonable person." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964). "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *Id.* at 69.

{¶ 18} As applied to juveniles, the United States Supreme Court has held that the Eighth Amendment precludes the imposition of the death penalty and the imposition of life without the possibility of parole for non-homicide cases. *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010). It has also banned mandatory life without the possibility of parole sentences for juveniles. *Miller v. Alabama*, 567 U.S. 460 (2012). Ohio courts have expanded on that guidance.

{¶ 19} In *State v. Long*, 2014-Ohio-849, a case involving aggravated murder, the

Ohio Supreme Court stated that "[a] court, in exercising its discretion . . . must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole." *Id.* at paragraph one of the syllabus. In *Patrick*, another aggravated murder case in which the defendant was a juvenile, the Court held that "a sentence of life in prison with parole eligibility imposed on a juvenile offender is analogous to a sentence of life in prison without the possibility of parole for purposes of analysis under the Eighth Amendment and that a court must specifically consider a juvenile offender's youth as a mitigating factor at sentencing." *Patrick,* 2020-Ohio-6803, at ¶ 36, 42.

{¶ 20} Most recently, the Ohio Supreme Court decided *State v. Morris*, 2022-Ohio-4609. The Court upheld *Patrick* and affirmed that a sentencing court must demonstrate *on the record* that it considered the defendant's youth in sentencing.

{¶ 21} In this case, Mitchell relies on the holdings of *Morris* and *Patrick*, asserting that R.C. 2929.02(B)(1) is constitutionally deficient because it does not even allow for the consideration of youth. The statute only gives a judge one choice: "whoever is convicted of or pleads guilty to murder in violation of section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life." R.C. 2929.02(B)(1). Hence, if there is no discretion, considering a juvenile offender's youth is meaningless. There are differences, however, between Mitchell's case and the *Morris* and *Patrick* cases.

{¶ 22} First, while Mitchell pled guilty to felony murder under R.C. 2903.02 and was sentenced pursuant to R.C. 2929.02(B)(1), the appellants in *Morris* and *Patrick* were convicted of aggravated murder under R.C. 2903.01 and sentenced under R.C. 2929.03. Both scenarios involve homicides, but the aggravated murder statute provides for multiple

punishment options, whereas Mitchell was sentenced under a different statute (felony murder) that does not. Therefore, we do not believe that *Morris* and *Patrick* are controlling.

{¶ 23} It is also significant that we have not found any cases from the Ohio Supreme Court or other Ohio appellate courts holding that a sentence of 15 years to life is unconstitutional when applied to a juvenile offender. In fact, we have found the opposite – every Ohio appellate court that has considered the issue has concluded that *Morris* and *Patrick* do not apply and that a juvenile sentenced under R.C. 2929.02(B)(1) has not had his Eighth Amendment right violated. *See State v. Fuell*, 2021-Ohio-1627 (12th Dist.); *State v. Carlock*, 2021-Ohio-4550 (11th Dist.); *State v. Miree*, 2022-Ohio-3664 (8th Dist.); *State v. Garner*, 2024-Ohio-5248 (3d Dist.); *State v. Price*, 2025-Ohio-685 (6th Dist.)

{¶ 24} Further, the United States Supreme Court has found that based on the unique circumstances of juveniles, the Eighth Amendment requires that juvenile offenders be given a " 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Miller*, 567 U.S. at 479, quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010). That means a juvenile offender must have "hope of restoration" and a "chance for fulfillment outside prison walls." *Graham* at 74-79. Here, Mitchell, who is serving a term of 25 years to life (15 years to life for felony murder plus time for aggravated robbery and the firearm specifications), will almost certainly get that type of opportunity. Mitchell was 17 years old when he was sentenced; he will be eligible for parole in his early 40s, likely giving him decades of "fulfillment outside the prison walls." *See also Price* at ¶ 41 ("There is no constitutional violation where appellant's life sentence is subject to a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation[.]"); *State*

*v. Brown*, 300 Kan. 542, 564 (2014) (By permitting parole after the mandatory 20-year minimum term is served, a sentence gives a juvenile offender a meaningful opportunity to obtain release.).

**{¶ 25}** Mitchell's sentence is not problematic because the punishment is not disproportionate to the crime. Ohio courts have held that the Eighth Amendment does not mandate strict proportionality between the crime and sentence and that "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" is cruel and unusual punishment implicated. *State v. Weitbrecht*, 86 Ohio St.3d 368, 373 (1999), quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J. concurring). Only sanctions that are "shocking to any reasonable person" can be considered "grossly disproportionate." *Id.* at 371.

**{¶ 26}** That is not the case here. Mitchell shot and killed B.C. while he was trying to escape a robbery and carjacking – Mitchell's second such crime of the night. A sentence with a life-tail is not grossly disproportionate to the crime of murder and would not shock a reasonable person. Based on the foregoing, we cannot say R.C. 2929.02(B)(1) is unconstitutional on its face or as applied to Mitchell.

**{¶ 27}** Mitchell has not demonstrated any error on the part of the trial court, plain or otherwise. As such, his assignments of error are overruled.

**III.    Conclusion**

**{¶ 28}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

HUFFMAN, J. and HANSEMAN, J., concur.